Filed 3/13/15  In re Brianna P. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re BRIANNA P. et al., Persons Coming Under the Juvenile Court Law. | |
| | D066530 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518405A-B) |
| v. | |
| T.S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Tungsten Legal and Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Montgomery, Deputy County Counsel, for Plaintiff and Respondent.

T.S. appeals the judgment terminating her parental rights to her children, Brianna P. and Daniel P., Jr. (we refer to Daniel P., Jr. as Daniel and to Brianna and Daniel together as the children). T.S. contends the juvenile court erred by declining to apply the beneficial relationship exception (Welf. & Inst. Code,[1] § 366.26, subd. (c)(1)(B)(i)) to termination of parental rights. We affirm.

BACKGROUND

Brianna was born in September 2009, when T.S. was a 15-year-old juvenile court dependent. Daniel was born in April 2011, when T.S. was 17 years old and still a juvenile court dependent. The children's father is Daniel P., Sr. (Daniel Sr.). Beginning in 2010, there were a number of child welfare referrals regarding the family. The referrals stemmed from ongoing domestic violence and other issues. The San Diego County Health and Human Services Agency (the Agency) offered voluntary services and safety plans, to no avail.

In May 2012 the Agency filed dependency petitions for two-and-one-half-year-old Brianna and one-year-old Daniel. The petitions alleged the children were exposed to violent confrontations between Daniel Sr. and T.S. The petitions also alleged that in April Daniel Sr. brought the children to the Child Welfare Office.

The children were detained in Polinsky Children's Center. Two days later, they were moved to an emergency shelter home. Daniel was hospitalized for three days due to severe eczema.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

In May 2012 the court made true findings on the petitions, ordered the children placed in a foster home and ordered reunification services. In July the children were moved to a foster home. Three days later, the children were removed from the foster home at the caregiver's request. The children were detained in Polinsky Children's Center for less than a day, then moved to a new foster home where they remained for the rest of the case.

T.S. made minimal progress in services. She entered into a relationship with Daniel E. that resulted in the birth of her third child in April 2013. The baby became a juvenile court dependent due to violence between T.S. and Daniel E.

At the 18-month hearing in January 2014, the court terminated T.S.'s services and set a section 366.26 hearing. The section 366.26 hearing took place in August.

DISCUSSION

T.S. does not contest the finding the children are adoptable. If a dependent child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1); *In re Helen W.* (2007) 150 Cal.App.4th 71, 80-81.) An exception exists if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly

3

harmed, the preference for adoption is overcome . . . ." (*Ibid*.)  The existence of a beneficial relationship is determined by considering "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*Id*. at p. 576.) Examining the evidence in the light most favorable to the judgment (*ibid*.), we conclude substantial evidence supports the court's findings.  The court found that initially visits were inconsistent, but visits became more consistent and were sometimes chaotic and sometimes positive.  The court found the children did not view T.S. as a parent; rather, the children viewed their caregivers as their parents.  The court concluded there was not a parent-child bond such that termination of parental rights would be detrimental to the children.

T.S.'s visits with the children were supervised for most of this case.  For the first year, T.S. did not take advantage of all of the visits she was offered.  In October 2012 the court gave the Agency discretion to allow unsupervised visits with notice to the children's counsel and, with the concurrence of the children's counsel, overnight visits and a 60-day trial visit.  Unsupervised visits began in June 2013 and overnight visits began on July 27. On July 29 the children were exposed to domestic violence between T.S. and Daniel E. The Agency suspended unsupervised and overnight visits.  In September the court reinstated the supervision requirement and gave the Agency discretion to allow unsupervised visits with notice to the children's counsel.  All subsequent visits were supervised.  Beginning in August, T.S. visited consistently, for the most part, although she was sometimes late.

4

During visits, T.S. sometimes acted as a parent and behaved appropriately and affectionately. At other times, she displayed ignorance of appropriate parenting techniques and had difficulty managing the children. She fluctuated between being attentive to their needs and being unaware of what they were doing. The children sometimes appeared happy to see T.S. and sometimes appeared ambivalent. The children did not express distress at the close of visits. They did not view T.S. as an authority figure and frequently asked other adults for assistance during visits. Brianna expressed love for T.S. and fear of her.

The children's exposure to domestic violence had caused them emotional harm. As a result, they suffered from anxiety, displayed traumatized behavior and were in therapy. Daniel behaved aggressively, engaged in "self injurious behavior," and had trouble following directions. He vomited when anxious or upset. Before visits, he often displayed regressive behavior. After visits, he refused to eat and exhibited other behavioral difficulties. Brianna could be impulsive and angry, and displayed behavior consistent with sexual abuse.[2] Before visits, the children became anxious. They expressed unwillingness to visit with T.S. and sought reassurance that they would return to the foster home after visits.

By the time of the section 366.26 hearing, nearly five-year-old Brianna and three-year-old Daniel had been out of T.S.'s care for more than two years four months. The

_____

[2]    In April 2012, while Brianna was still in T.S.'s care, there was a report that Brianna had been sexually abused by one of T.S.'s boyfriends, Daniel M. The allegation could not be substantiated.

5

children had lived with their foster parents for more than two years.  The children were attached to the foster parents and called them "mommy" and "papi."  The foster parents were loving, cognizant of the children's many needs and fulfilled those needs.  The foster parents wished to adopt the children.  The children were thriving in the foster parents' care and needed the stability, permanence and safety of adoption.

T.S. relies on *In re S.B.* (2008) 164 Cal.App.4th 289, in which this court concluded the juvenile court erred by declining to apply the beneficial relationship exception.  (*Id*. at p. 301.)  That case is distinguishable.  There, the appellant father "complied with 'every aspect' of his case plan" and placed the child's needs above his own.  (*Id*. at p. 298.)  The child displayed a strong attachment to the father (*id*. at p. 298), "became upset when the visits ended and wanted to leave with [him]" (*id*. at p. 294).  They "had an emotionally significant relationship."  (*Id*. at p. 298.)

## DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

6